IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2913

_____

CORNEL WEST; MELINA ABDULLAH; GERALDINE TUNSTALLE;
KATHERINE HOPKINS-BOT; CHARLES HIER

Appellants

v.

PENNSYLVANIA DEPARTMENT OF STATE; SECRETARY
COMMONWEALTH OF PENNSYLVANIA

_____

APPELLEES' RESPONSE IN OPPOSITION TO
APPELLANTS' MOTION FOR AN INJUNCTION PENDING APPEAL

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA, NO. 2:24-CV-1349

MICHELLE A. HENRY
*Attorney General*

BY: SEAN A. KIRKPATRICK
*Chief Deputy Attorney General*

JACOB B. BOYER
*Deputy General Counsel*

MICHAEL J. SCARINCI
*Senior Deputy Attorney General*

Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
Phone: (717) 460-6786

DANIEL B. MULLEN
BRETT GRAHAM
*Deputy Attorneys General*

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 705-2331

DATE: October 28, 2024

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND .................................................................................3

A.  Election Logistics in Pennsylvania. ...............................................3

B.  2024 Nomination Period. .............................................................4

C.  State Court Litigation. ................................................................6

D.  Federal Court Litigation. ............................................................7

ARGUMENT ......................................................................................8

I.  *Purcell*, Laches, and Common Sense Preclude the Candidates'
    Attempt to Sow Chaos Eight Days before the 2024 Election. .......................9

    A.  The Candidates' request is barred by the *Purcell* principle. ................9

    B.  The Candidates' request is barred by laches. ....................................17

II.  The Candidates Cannot Show A Likelihood of Success on Appeal. ............18

CONCLUSION ...................................................................................24

CERTIFICATE OF COUNSEL ............................................................25

CERTIFICATE OF SERVICE .............................................................26

# INTRODUCTION

"Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016). Under all of these metrics, this eleventh-hour request by Cornel West and Melina Abdullah (collectively, "Candidates")[1] to be added to Pennsylvania's ballot one week before Election Day fails miserably. Simply put, it is impossible, both practically and legally, to add the Candidates to the ballot by next Tuesday, or grant them any other relief.

Preparing for a statewide election "is extraordinarily complicated and difficult." *Merrill v. Milligan*, 142 S.Ct. 879, 880 (2022) (Kavanaugh, J., concurring). It requires "enormous advance preparations by state and local officials, and pose[s] significant logistical challenges." *Ibid.* Pennsylvania's preparations for the 2024 general election are nearly complete. Millions of ballots have been printed. Critical testing of Election Day equipment—a process that would take several weeks to redo—is done. That same equipment is being securely stored and will soon be

---

[1]     In addition to the Candidates, Appellants, plaintiffs below, include three voters who support them: Melina Abdullah; Geraldine Tunstalle, Katherine Hopkins-Bot; and Charlies Hier.

Appellees, defendants below, are the Pennsylvania Department of State (Department) and the Secretary of the Commonwealth (Secretary).

delivered to precincts throughout the Commonwealth. More than 1.7 million ballots have already been sent to voters and over 1.4 million ballots have already been returned.

Adding a new candidate to the ballot at this stage, the District Court correctly concluded, presents "actual risk of harm to Defendants and other election officials, as well as voters" and would introduce the risk of "major errors" in the election. Mem. at 8, 11 (ECF 33).[2] Giving large swathes of Pennsylvania's electorate different ballots would "ensure voter confusion." *Id.* at 8-9. All that was true *18 days ago*. It is even truer now.

In fact, relief is legally unavailable to the Candidates at this stage. This case revolves around the rejection of the Candidates' nomination petition because they failed to produce affidavits for their 19 presidential electors as required under 25 P.S. § 2911(e). But that is just the first hurdle they must clear to get on the ballot. The Candidates wrongly presume—without any record support—that they can clear the remaining hurdles.

Once a nomination petition is filed, Pennsylvania law gives parties seven days to challenge it as "defective" or lacking "a sufficient number of genuine signatures." 25 P.S. § 2937. That process alone can take weeks. *See, e.g.*, *In re De La Cruz*, 2024

---

[2]     ECF citations are to the District Court docket.

WL 4181581 (Pa. Sept. 13, 2024) (six weeks to resolve objections). And even if the Candidates could somehow resolve a potential objection before Election Day, every county in Pennsylvania would then have to re-print *millions* of ballots, and perform legally-required "logic and accuracy" testing on their electronic voting systems using these newly-printed ballots. 25 P.S. § 3031.10.

The Candidates bring an unserious motion that fails to meaningfully grapple with the impossibility of their request and shows outright contempt for the officials who have spent months preparing Pennsylvania for next week's election. Granting the Candidates' request would sow chaos, undermine election integrity, and defy the Supreme Court's repeated admonition that federal courts should not meddle with state election rules close to Election Day. *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam); *RNC v. DNC*, 589 U.S. 423, 424, (2020).

The District Court correctly declined to upend Pennsylvania's election when Election Day was a month away. Mem. (ECF 33). The election is now a *week* away. Candidates' requested relief is not only unwarranted, it is impossible.

## BACKGROUND

**A.      Election Logistics in Pennsylvania.**

Pennsylvania's elections are primarily administered by 67 County Boards of Elections—none of which are parties here. Transcript at 33-34 (Motion Ex. A). Once the Secretary certifies the list of candidates, County Boards create their unique

ballots to be sent to a small number of specialized printers. *Id.* at 41-42, 58-59, 70. At the hearing below, Deputy Secretary for Elections, Jonathan Marks, testified that—as of October 7—he was not confident printers could reprint the necessary ballots by November 5. *Id.* at 59. That was three weeks ago.

The printers send the County Boards proof sheets, followed by sample ballots, and then test ballots for inspection. *Id.* at 42. A series of completed sample ballots with a predetermined outcome are then used to test the counties' voting tabulation machines. *Id.* at 42, 47-48. This is called "logic and accuracy" (L&A) testing. *Id.* at 43-44. Machines in every precinct, in all 67 counties, must be individually tested. *Id.* at 47-48. Philadelphia alone has 3,500-4,000 machines. *Id.* at 49. Failure to carefully test each machine risks tabulation errors, where the machines do not pick up every vote for a specific candidate. *Id.* 78-79, 81-82. After machines are tested, the equipment is sealed and locked in advance of Election Day. *Id.* at 50. This testing must be done at least 15 days before the election, which was October 21, 2024. *Id.* at 66.

**B.    2024 Nomination Period.**

In Pennsylvania, political bodies like Justice for All—the Candidates' party— nominate candidates for a general election by submitting nomination papers to the

Department. 25 P.S. §§ 2911-2914.[3] Political bodies have six months to complete the nomination paperwork, which requires, among other things, gathering signatures and completing an affidavit for each nominee—including nominees for presidential elector. Political bodies can (and often do) consult the Department about what is required of them and can correct issues with their nomination papers before the filing deadline. For the 2024 general election, the deadline was August 1. Stip. ¶7 (ECF 29). Once filed, anyone can, within seven days, object to a nomination petition on the grounds it is "defective" or lacking "a sufficient number of genuine signatures." 25 P.S. § 2937.

On July 11, the Candidates submitted nomination papers for the 2024 election without affidavits from all presidential electors. Stip. ¶14 (ECF 29). The Department informed them the same day that their nomination papers could not be accepted. *Id.* ¶17; Ex. 1 (ECF No. 29-1). On the August 1 deadline, the Candidates resubmitted their nomination papers, but again failed to provide the required affidavits. Stip. ¶¶

---

[3]     Pennsylvania's Election Code distinguishes between "political parties" and "political bodies." A political party is a political group that received votes above a certain threshold in the most recent general election. 25 P.S. § 2831(a). "Major" political parties have received over 15% of the combined statewide registration for all statewide political parties as of the close of registration for the immediately preceding November election. *Id.* § 2872.2(a). Minor political parties must meet a lower threshold of 2% of the vote cast, both statewide and in each of ten counties. *Id.* § 2831(a). Political bodies are organizations that cannot achieve the lower thresholds. *Id.* § 2831.

20-22. The Department again informed the Candidates that it could not accept their incomplete papers, emailing the rejection notice to the campaign on August 2 and mailing it to Dr. West on August 5. *Id.* ¶¶23-25; Exs. 8 & 9 (ECF Nos. 29-8, 29-9).

## C. State Court Litigation.

Two sets of petitioners filed actions in Commonwealth Court challenging the Department's rejection of nomination papers. Representatives of the Constitution Party sued on August 5. *Clymer v. Schmidt*, 376 MD 2024 (Pa. Cmwlth.). Representatives of Justice for All brought a second challenge, but waited until August 15 to file. *Williams v. Schmidt*, 394 MD 2024 (Pa. Cmwlth.).

In *Clymer*, the Commonwealth Court held that, under Pennsylvania law, the Department may not accept political bodies' nomination papers if they lacked affidavits from each nominee for presidential elector. *Clymer v. Schmidt*, 2024 WL 4231289, at *8 (Pa. Cmwlth. Aug, 23, 2024) ("*Clymer I*"). Rejecting the constitutional argument the Candidates make here, the court recognized the affidavit is a minimal, reasonable burden and, therefore, violates neither the First nor Fourteenth Amendments to the U.S. Constitution. *Id.* at *12-13.

In *Williams*, the Commonwealth Court dismissed Justice for All's petition based on laches because petitioners had failed to act with diligence and, given the compressed timeline for preparing a general election ballot, the delay was prejudicial. *Williams I*, 2024 WL 3912684, at *5-6.

Pennsylvania's Supreme Court affirmed both orders. *Clymer v. Schmidt*, 2024 WL 4181585 (Pa. Sept. 13, 2024); *Williams v. Pa. Dep't of State*, 2024 WL 4195131 (Pa. Sept. 16, 2024).

On September 16, the Secretary certified the list of candidates for the 2024 election (with one exception for a state house race that was certified a week later). *Secretary of the Commonwealth Certifies 2024 Ballot for Nov. 5 General Election* (Sept. 16, 2024).[4]

**D.  Federal Court Litigation.**

On September 25—76 days after the Candidates' nomination papers were first rejected, 55 days after they were finally rejected, and 9 days after the state court litigation was resolved—the Candidates filed this action, seeking an emergency temporary restraining order and preliminary injunction.

At the October 7 hearing, the Candidates' called only Dr. West. The Department called Deputy Secretary Marks to detail the status of Pennsylvania's election preparations and describe the risks of adding a new candidate to the ballot.

Based on Marks' unrebutted testimony, the District Court denied the Candidates' request, concluding that there was "actual risk of harm to Defendants and other election officials, as well as voters, if the injunction is granted." Mem. at

---

[4]    Available at: https://www.pa.gov/en/agencies/dos/newsroom/secretary-of-the-commonwealth-certifies-2024-ballot-for-nov--5-g.html.

8 (ECF 33). The District Court correctly found that starting the process *on October 10* to add a new candidate would threaten the efficacy of counties' critical pre-election testing and jeopardize Election Day preparedness. *Id.* at 9.

After waiting a week, the Candidates then asked the District Court for an injunction pending appeal. ECF 37. The District Court denied that motion for the same reasons it had denied the initial request. Mem. (ECF 41). The Candidates then waited *another* week to file their emergency motion in this Court. Election Day is now only eight days away.

## ARGUMENT

The Candidates seek a truly extraordinary remedy: to bar enforcement of a Pennsylvania law—which the Pennsylvania courts have declared constitutional. *Clymer I*, *supra*, at *12-13. Having delayed this litigation until their requested relief would be most disruptive to Pennsylvania's election process, and having twice failed to obtain an injunction in the District Court, the Candidates now ask this Court to declare them the ultimate winner without having to fully litigate the issues below or on appeal. The Candidates thus seek "'judgment and execution before trial.'" *Delaware State Sportsmen's Assoc., v. Delaware Dept' of Safety & Homeland Security*, 108 F.4th 194, 200 (3d Cir. 2024) ("*DSSA*").

"Injunctions pending appeal, like preliminary injunctions, are 'extraordinary remedies never awarded as of right.'" *Donald J. Trump for President*, 830 Fed.Appx.

377, 389 (3d Cir. 2020) (cleaned up). To obtain an injunction pending appeal, the movant must show: (1) a "strong" likelihood of success on the merits; (2) irreparable injury absent a stay or injunction; (3) that a stay or injunction will not injure other interested parties; and (4) the public interest. *Ibid*. The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). An injunction barring the enforcement of a state law poses additional concerns, as it "threatens federalism and the separation of powers." *DSSA*, 108 F.4th at 205-206; ("Without the clarity of a full trial on the merits, … we must err on the side of respecting state sovereignty."). In *Wisconsin Right to Life. v. FEC*, then-Chief Justice Rehnquist recognized that a movant faces an exceptionally high hurdle when seeking the "extraordinary remedy" of enjoining a democratically-enacted law pending appeal, particularly when that request was rejected by a presiding district court. 542 U.S. 1305, 1305-1306 (2004) (Rehnquist, C.J., in chambers).

I.  ***Purcell*, Laches, and Common Sense Preclude the Candidates' Attempt to Sow Chaos Eight Days before the 2024 Election.**

Applying *Purcell* and common sense, the District Court correctly determined that factors 3-4 weighed heavily against an injunction. The Candidates' challenge to that determination is at war with the law, the record, and reason.

A.  **The Candidates' request is barred by the *Purcell* principle.**

"[I]n addition to the traditional considerations for injunctive relief," a court must weigh "considerations specific to election cases." *Purcell*, 549 U.S. at 4; *Kim*

*v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024). *Purcell* plainly bars the Candidates'
request for federal court intervention in Pennsylvania's election process eight days
before the election.

The *Purcell* principle requires courts to consider that "orders affecting
elections … can themselves result in … confusion" for voters and election
administrators. *Purcell*, 549 U.S. at 4-5. And, as an election draws nearer, that risk
of confusion only increases. *Id.* at 5. The High Court has "repeatedly emphasized
that lower federal courts" should not interfere with state election law in the "weeks
before an election." *RNC*, 589 U.S. at 424; *Purcell*, 549 U.S. at 4. Indeed, the High
Court has "often stayed lower federal court injunctions that contravened [the
*Purcell*] principle." *Merrill*, 142 S.Ct. at 880 (Kavanaugh, J., concurring).

This election, however, is not merely "close at hand," *DNC v. Wisconsin State
Legislature*, 141 S.Ct. 28, 31 (2020) (Kavanaugh, J., concurring)—it "is happening
right now." *Pierce v. N. Carolina State Bd. of Elections*, 97 F.4th 194, 227 (4th Cir.
2024). As of this morning, over 1.4 million Pennsylvanians already returned mail-in
ballots.[5] The District Court therefore rightly recognized that *Purcell* "applies with
even more force" here. Mem. at 8 (ECF 33).

---

[5]      Commonwealth of Pennsylvania, Elections Data, Daily Mail Ballot Report,
https://www.pa.gov/en/agencies/vote/elections/elections-data.html.

The Candidates maintain that *Purcell* is not implicated because adding a candidate to the ballot is not a "change to election procedure governed by *Purcell*." Motion at 11. They are wrong. As the District Court emphasized, "[c]ourts have characterized many election-related provisions as 'election rules' subject to *Purcell*," including "the rules of initiatives or candidates to get on the ballot." Mem. at 10 (ECF 33) (citing *Tennessee Conf. of the NAACP v. Lee*, 105 F.4th 888, 897 (6th Cir. 2024)). The only way the Candidates can obtain access to the ballot is by having a federal court enjoin the Department from enforcing 25 P.S. § 2911. That rule requires the Candidates to file affidavits from each of their presidential electors so that the Candidates can have access to the ballot.[6]

Adding the Candidates to the ballot now would also affect other state election laws. As the District Court highlighted, the Candidates requested that it "change the rules as to an objections period for nominations," which is seven days under state law. Mem. at 10-11 (ECF 33); *see also* 25 P.S. § 2937. Changing one rule has a cascading effect. *Wisconsin State Legislature*, 141 S.Ct. at 31.

---

[6]     For support that *Purcell* does not apply to a candidate's access to the ballot, the Candidates cite to *Bryan v. Fawkes*, 61 V.I. 416, 469 (2014). But that court mistakenly thought *Purcell* was limited to "large-scale changes to the election process itself." *Ibid.* As Justice Kavanaugh highlighted, "[e]ven seemingly innocuous" changes may "interfere with administration of an election and cause unanticipated consequences." *Wisconsin State Legislature*, 141 S.Ct. at 31.

Just as obvious as *Purcell* being implicated is the confusion and chaos that would follow from the requested relief. The Candidates propose having two different ballots—one for mail-in/absentee voters, and one for those voting in-person. This would result in voter and election administrator confusion, inspire calls to doubt the integrity of the voting process, and add a significant administrative burden. *See Lauters*, 2024 WL 4517911, *7 ("[d]ifferent ballots issued to otherwise similarly situated voters would pose different legal problems"); *Brnovich v. DNC*, 594 U.S. 647, 685 (2021) ("A State indisputably has a compelling interest in preserving the integrity of its election process."). This is so obviously "self-evident" as a matter of "common sense" that specific evidence on this point is "unnecessary." Motion at 15 n.8 (acknowledging that for "certain changes," the possibility of voter confusion is "self-evident").

Contrary to the Candidates' contention, the Department did not have the burden of showing that confusion would result from the changes they propose. Rather, because they seek to change the rules of an election that is well underway, it was *their* burden to clearly show that the changes they propose "are at least feasible before the election without significant cost, confusion, or hardship." *Merrill*, 142 S.Ct. at 881 (Kavanaugh, J., concurring); *League of Women Voters of Florida v. Florida Sec'y of State*, 32 F.4th 1363, 1372 (11th Cir. 2022) (*Purcell* "heightens the standard that a *plaintiff* must meet") (emphasis added) (citing *Merrill*, 142 S.Ct. at

881 (Kavanaugh, J., concurring)). They have abjectly failed to carry this burden. Indeed, they have not presented *any* evidence that relief is possible without significant hardship.

Notably, while the Department did not bear the burden, it certainly presented more than a "threadbare allegation" of voter and election administrator confusion, *cf.* Motion at 14; it detailed the threat to election integrity and the considerable administrative burdens associated with the requested relief. *Tennessee Conf.*, 105 F.4th at 897.

The District Court found that Deputy Secretary Marks—who has over 20 years' experience with elections—"credibly testified" about the "feasibility" of printing new ballots. Transcript at 31, 79; Mem. at 9 (ECF 33); *Covertech Fabricating v. TVM Building Products*, 855 F.3d 163, 169-170 (3d Cir. 2017) (district court's credibility determinations and factual findings reviewed for "clear error"). Because the Candidates did not proffer a single election official at the October 7 hearing, Marks's testimony is unrebutted.

Marks expressed skepticism that county boards could reprint ballots and perform the legally-required L&A testing by Election Day. Transcript at 50-59. That was more than *20 days ago*. Marks explained that some vendors have many clients and "do not have the capacity to print ballots for all of their clients simultaneously."

*Ibid.* Accordingly, these vendors schedule printing "over [a] period of several weeks." *Ibid.*

Sample ballots must also be fed through scanners and tabulators for L&A testing. Transcript at 42. The counties—not the Department—complete this process before Election Day to ensure that the machines will properly and accurately count votes cast by millions of Pennsylvanians. *Id.* at 46. Philadelphia, for example, has around 4,000 machines, and each one must be tested for logic and accuracy. *Id.* at 49. It took Philadelphia a week to complete such testing this year. *Ibid.* Once completed, the machines are locked and sealed in advance of Election Day. *Id.* at 50. L&A testing needed to be completed 15 days before Election Day. *Ibid.* That date has now passed, and ordering the reprinting of new ballots would require the counties to unseal the machines, repeat logic and accuracy testing, and then reseal the machines. *Id.* at 52.

If counties are forced to compress the timeline for this process, or forgo it entirely, there is a risk of error. Transcript at 52, 78-79. As the District Court put it, "prudence exchanged for speed" "come[s] at a cost." Mem. at 9 (ECF 33). The errors could range from misspelling candidates' names, to ballot formatting errors, to the incorrect recording of votes. *Id.* at 9 n.10. Such errors, the District Court recognized, would strike a "blow to public confidence in Pennsylvania's election" process. *Id.* at 9. The risk for error is more pronounced now that 18 days have passed since the

District Court denied the Candidates' motion. This is not some theoretical error, as the Candidates suggest. Marks described errors that occurred in tabulation in a 2023 race when L&A testing was not properly completed. *Id.* at 82-83.

Though Marks's unrebutted testimony was specifically credited by the District Court, the Candidates nonetheless urge this Court to disregard it, insisting that adding them to ballot before Election Day is feasible. Their effort to undermine Marks' credible, unrebutted testimony is both unpersuasive and misleading.

Initially, the Candidates point to a stipulation in a state court proceeding in Montgomery County, arguing that it proves L&A testing can be performed in under four hours. Motion at 18-19. But—for the second time, *see* Br. at 17-18 (ECF 37-1)—the Candidates outright misrepresent the substance of that stipulation. What it actually refers to is how long it took Montgomery County to complete testing on *nine pieces of a single type of equipment*. Decl. of Frank Dean at ¶9 (ECF 40-2).[7] As noted, the *full* L&A testing in Montgomery County began on September 23, and was not completed until October 10. *Id.* at ¶¶6-7, 10.

Next, the Candidates regurgitate their argument that, because late changes to ballots occurred in 2014 and 2016, it can be done now. Motion at 4-5, 25-26; Br. at

---

[7]   Opposing the Candidates' motion for a stay of the District Court's order denying injunctive relief, the Department presented an affidavit from Frank Dean, the Director of Elections for Montgomery County. Decl. of Dean at ¶9-11 (ECF 40-2).

7, 19-20 (ECF 37-1). But, for the second time, the Candidates conveniently ignore Marks's *unrebutted* testimony in which he explained that both Act 77 of 2019 and voting equipment changes in 2020 have made any late-changes to ballots significantly more challenging. Transcript at 74-76. While the Candidates assert that "Marks's testimony isn't credible," the District Court correctly found otherwise.

Finally, the Candidates attempt to hand-wave any concern about the ability to re-do the L&A testing before Election Day as mere "bureaucratic difficulties." Motion at 25. This shows an astonishing disregard for the enormity of this legally-required task, and demonstrates that the Candidates simply do not understand—or care about—what preparing for an election actually entails.

The actual harm to the Commonwealth and its citizens is real. The District Court "rightly heeded the Supreme Court's warning against triggering this cascade of election chaos" by denying the injunction. *Pierce*, 97 F.4th at 227; *see DSSA*, 108 F.4th at 205.[8]

---

[8] In addition to their request to be placed on the ballot, the Candidates also vaguely request that counties be compelled to "post notices" if they "truly cannot" reprint new ballots. Motion at 26. They do not even attempt to explain what these notices would contain. But even if this Court were inclined to grant the Candidates' vague request, the Candidates failed to sue *any* county board of elections in this action. The Eleventh Amendment would bar any attempt to impose that relief on the Department. *Ex parte Young*, 209 U.S. 123, 157 (1908).

## B. The Candidates' request is barred by laches.

The Candidates' serial delays throughout this process have rendered any relief impossible. So, on top of *Purcell*, their late-stage request is also barred by laches. Laches consists of two elements: (1) inexcusable delay in bringing suit; and (2) prejudice to the defendant because of the delay. *Santana Prod. v. Bobrick Washroom Equip.*, 401 F.3d 123, 138 (3d Cir. 2005). Both elements are easily satisfied here.

Regarding delay, the Candidates' nomination petition was first rejected on July 11 for failure to comply with 25 P.S. § 2911(e)'s affidavit requirement, and was finally rejected on August 1. Other similarly situated candidates promptly brought actions in Pennsylvania's Commonwealth Court on August 5, submitting briefs by August 15. *Clymer I*, *supra*.

Justice for All, by contrast, waited until August 15 to *initiate* its action in the Commonwealth Court, which found the two-week delay unacceptable under the circumstances. Objections to nomination papers, for example, must be filed within seven days. That court also determined that the delay prejudiced the Department given the then-impending printing of ballots, and that the action was therefore barred by laches. *Williams I*, at *5-6. The Pennsylvania Supreme Court affirmed on September 16. *Williams II*, *supra*. The Candidates apparently learned nothing from this experience.

Rather than file the present action promptly after the state court rulings, the Candidates waited until *September 25*. Rather than moving quickly after the District Court denied their preliminary injunction motion on *October 10*, the Candidates waited until *October 17* to seek an injunction pending appeal. And instead of moving with alacrity after the District Court denied that request on *October 18*, the Candidates waited until *October 24* to seek injunctive relief in this Court.

Here, the Candidates do not even *attempt* to account for their many delays, even though the Department repeatedly raised this issue below. Br. at 8-9 (ECF 20); Post-Hearing Br. at 3-5 (ECF 32); Response at 6 (ECF 40). Their strategic avoidance of this issue is understandable, but their repeated delays are inexcusable.

For the reasons discussed *supra*, these delays prejudiced the Department, as well as non-party county boards. Without repeating them here, the Department reiterates that the Candidates' utter disregard for these harms do not render them any less prejudicial.

## II.     The Candidates Cannot Show A Likelihood of Success on Appeal.

The Candidates fail to demonstrate a strong likelihood of success on the merits in their *appeal* from the denial of a *preliminary injunction*. Their contrary argument contains at least two critical flaws.

*First*, the Candidates conflate their chances of success below with their chances to succeed on appeal. The Candidates' motion for injunction pending appeal

is not simply a second bite at their original *preliminary* motion; the present inquiry asks whether the Candidates can show a strong likelihood of success *on appeal*. *See, e.g.*, *Yapp USA Automotive Systems v. National Labor Relations Bd.*, 2024 WL 4489598, at *1 (6th Cir. Oct. 13, 2024) (examining "whether the applicant is likely to succeed on the merits of the appeal[.]").

The District Court understood this distinction. In denying the Candidates' motion for an injunction pending appeal, the District Court's discussion "beg[an] and end[ed] with the likelihood of success factor." Mem. at 1 (ECF 41). The District Court concluded that the Candidates failed to meet this factor, because they failed to establish that there was a "'strong' chance that they will prevail *on their appeal*." *Ibid.* (emphasis added) (quoting *Donald J. Trump for President*, 830 Fed.Appx. at 389). This is because a "decision to grant or deny an injunction is reviewed for abuse of discretion." *Delaware Strong Families v. Att'y Gen. of Delaware*, 793 F.3d 304, 308 (3d Cir. 2015). Given the strong equities weighing against an injunction here, the District Court clearly did not abuse its discretion.

*Second*, even if this Court were to assess the Candidates' likelihood of success on the underlying merits, the District Court's analysis was deeply flawed. District courts were reminded recently that "forecasting the merits risks prejudging them." *DSSA*, 108 F.4th at 200. In a "hasty process," courts may "jump to conclusions" or fail to consider questions "from every angle," as the ordinary trial process allows.

*Id.* (citing, *inter alia*, *Herman v. Dixon*, 141 A.2d 576, 577 (Pa. 1958)). Respectfully, this case represents a prime example of that concern.

The Candidates' underlying claims are meritless. As detailed *supra* at fn.3, Pennsylvania's Election Code establishes distinct nomination processes for "political parties" and "political bodies." In short, political parties conduct primary elections to nominate their candidates; political bodies collect signatures and file nomination papers with the Department. 25 P.S. §§ 2831, 2872.2; *Working Families Party v. Commonwealth*, 169 A.3d 1247, 1262-1263 (Pa. Cmwlth. 2017) (*en banc*), *aff'd*, 209 A.3d 270, 273 (Pa. 2019).

In the Candidates' view, political bodies are burdened having to identify 19 individuals who are eligible to serve as presidential electors, and by having to obtain and file affidavits on behalf of those individuals. Mem. at 4 (ECF 33). While the District Court properly evaluated the Candidates' request under both the standard for a preliminary injunction and principles regarding last-minute election litigation, it offered several pointed comments suggesting there was merit to the Candidates' challenge. *Ibid.* These comments are mistaken; the Candidates' merits argument is riddled with errors and contrary to precedent.

Courts have frequently recognized that "alternate ballot access rules for major and minor political parties are not *per se* unconstitutional." *Rogers v. Corbett*, 468

F.3d 188, 196 (3d Cir. 2006).[9] And when considering ballots access rules, this Court has eschewed tiers of scrutiny and has instead directed a balancing of what "burden is placed on the rights which plaintiffs seek to assert" against "the precise interests identified by the state." *Id.* at 194. While this standard is reminiscent of means-ends scrutiny, this Court has instructed that "ballot access cases should not be pegged" into the familiar triumvirate of rational basis review, intermediate scrutiny, and strict scrutiny. *Ibid.* In reasoning otherwise, the District Court went astray. It suggested that some form of "heightened" scrutiny applies and then opined that the relevant burden "is more than minimal." Mem. at 4-6 (ECF 33). But that inverts the analysis. *See Rogers*, 468 F.3d at 194.

As it is, the Election Code imposes only a modest burden. It requires completion of 19 one-page affidavits with routine facts about the affiant, which may be unsworn, and can be prepared over the course of six months. The Department provides guidance for political bodies seeking compliance, offering opportunities to correct errors before filing deadlines. Br. at 20-21 (ECF 20) (citations omitted). Indeed, the process for political bodies obtaining ballot access is more

---

[9]     The Pennsylvania Supreme Court has held that "reasonable, non-discriminatory restrictions" aimed at promoting "honest and fair elections that proceed in an orderly and efficient manner" do not transform valid ballot-casting rules into impermissible infringements upon the franchise. *Banfield v. Cortes*, 110 A.3d 115, 176-177 (Pa. 2015) (collecting cases); *In re Scroggin*, 237 A.3d 1006, 1023 (Pa. 2020).

straightforward than the process for political parties obtaining ballot access, which contemplates a separate host of deadlines, signature requirements, and unique restrictions. *See id.* at 23-24 (discussing 25 P.S. §§ 2862, 2867-2869).

These requirements apply equally to all political bodies, and the Candidates raise no claim that they in particular are at a disadvantage in attempting to comply with them. The disaffiliation provision and its specifications are facially neutral and eminently reasonable in light of obvious fraud-prevention concerns. *See Scroggin*, 237 A.3d at 1018-1019 (identifying affidavit requirement as "[o]ne of the Election Code's critical anti-fraud mechanisms") (cleaned up). Considering the minimal burden they impose and age-old state interests they serve, the provisions the Candidates challenge easily pass *Rogers*'s balancing test. Pennsylvania has a compelling interest in protecting the integrity of its political process and in keeping unserious candidates from overcrowding the ballot. *Clements v. Fashing*, 457 U.S. 957, 965 (1982) (plurality). Pennsylvania and every other state may impose "reasonable level-of-support requirements and classifications that turn on the political party's success in prior elections." *Ibid.* The rule that the Candidates challenge ensures that only legitimate presidential candidates—ones who have identified a full slate of presidential electors willing and able to support them— appear on the ballot. Should this Court reach the merits of the Candidates' claim, it should correct the analytical errors below.

* * *

The Candidates' requested injunction is practically and legally impossible. But even if possible at this late stage, it would increase the likelihood of voting errors and throw Pennsylvania's election preparations into chaos. For two candidates who claim to champion the right to vote, their actions throughout this litigation demonstrate a callous disdain for the electoral process.

# CONCLUSION

An injunction pending appeal should be denied.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

BY:   *s/ Sean A. Kirkpatrick*
      SEAN A. KIRKPATRICK
      *Chief Deputy Attorney General*
      Bar No. 92960 (Pa.)

JACOB B. BOYER                    MICHAEL J. SCARINCI
*Deputy General Counsel*          *Senior Deputy Attorney General*

Office of General Counsel         DANIEL B. MULLEN
333 Market Street, 17th Fl.       BRETT GRAHAM
Harrisburg, PA 17101              *Deputy Attorneys General*
Phone: (717) 460-6786
                                  Office of Attorney General
                                  15th Floor, Strawberry Square
                                  Harrisburg, PA 17120
DATE: October 28, 2024            Phone: (717) 705-2331

# CERTIFICATE OF COUNSEL

I, Sean A. Kirkpatrick, Chief Deputy Attorney General, hereby certify as follows:

1. That I am a member of the bar of this Court.

2. That a virus detection program was run on the file and no virus was detected.

3. That this response contains 5,189 words within the meaning of Fed.R.App.P. 27(d)(2)(A). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

*/s/ Sean A. Kirkpatrick*

SEAN A. KIRKPATRICK
Chief Deputy Attorney General

DATE: October 28, 2024

## CERTIFICATE OF SERVICE

I, Sean A. Kirkpatrick, Chief Deputy Attorney General, do hereby certify that I have this day served the foregoing Appellees' Response in Opposition to Appellants' Motion for an Injunction Pending Appeal, via electronic service, on all counsel of record on the docket.

*/s/ Sean A. Kirkpatrick*

SEAN A. KIRKPATRICK
Chief Deputy Attorney General

DATE: October 28, 2024